[Cite as *State ex rel. Berry v. Indus. Comm.*, 2024-Ohio-2616.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Curtis A. Berry,  :

       Relator,  :  No. 21AP-548

v.  :  (REGULAR CALENDAR)

Industrial Commission of Ohio et al.,  :

       Respondents.  :

---

D E C I S I O N

Rendered on July 9, 2024

---

**On brief:** *Plevin & Gallucci Co.*, *L.P.A.*, *Frank L. Galluci, III*, *Louis E. Grube*, and *David R. Grant*; *Flowers & Grube*, *Paul W. Flowers*, and *Louis E. Grube*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Cindy L. Albrecht*, for respondent Industrial Commission of Ohio.

**On brief:** *Frost Brown Todd*, *L.L.C.*, *Noel C. Shepard*, and *Steven M. Tolbert, Jr.*, for respondent Underground Utilities, Inc.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Curtis A. Berry, has filed this original action requesting a writ of mandamus directing respondent Industrial Commission of Ohio ("commission") to vacate its orders dated May 4 and July 24, 2021, and grant his Violation of a Specific Safety Requirement ("VSSR") application dated April 23, 2020.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate found

the commission did not abuse its discretion and recommends that this court deny Berry's petition for a writ of mandamus. (Appended Mag.'s Decision at 24-27.)

{¶ 3} On June 9, 2023, Berry filed his objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} On July 24, 2017, Berry was injured while working as a pipe layer for respondent Underground Utilities, Inc. ("Underground Utilities"). A crew from Underground Utilities, including Berry, was working along Shattuck Road in Columbus to install a water line. A large excavator weighing an estimated 40,000 pounds would remove dirt and asphalt to create a trench in which to lay the new water line and would place the removed dirt and asphalt in dump trucks weighing approximately 15,000 pounds parked next to the excavator. The dump trucks would haul away the removed dirt and asphalt and bring back fresh fill dirt to the trench. After the new water line was placed in the trench, a front loader weighing approximately 35,000 pounds would then place fill dirt around and over the new water line, and then a mini excavator with a plate compactor weighing approximately 24,000 pounds would compact the fresh fill dirt.

{¶ 5} On the date of his injury, Berry was working next to the large excavator locating other utility lines in the trench, which was approximately 3.5 feet deep. The large excavator had driven over a section of the asphalt along Shattuck Road while digging the trench and was sitting idle, next to a dump truck. The front loader, mini excavator, and an unused trench box were approximately 60 to 70 feet away, at the other end of the trench, where a section of the new water line had been laid. While Berry was working in the trench, a large piece of asphalt (6 to 12 inches thick, 12 to 18 inches wide, and 15 to 30 feet long) detached from the roadway and fell on top of him, causing severe injuries. The slab of asphalt landed above Berry's hip and was so large it had to be removed with machinery.

{¶ 6} On August 11, 2017, Berry's claim for workers' compensation was allowed for fracture of superior rim of right pubis for closed fracture; contusion of right thigh; contusion of lower back and pelvis; nondisplaced fracture of anterior wall of right acetabulum; contusion of right hip; protrusion with effacement thecal sac L5-S1; protrusion with effacement thecal sac L4-L5; thigh hematoma, right; hip hematoma, right; substantial

aggravation of pre-existing spinal stenosis lumbar region L3-L5; substantial aggravation of pre-existing spinal stenosis lumbosacral region L5-S1; and intervertebral disc displacement at L3-L4. Berry was awarded temporary total disability compensation through March 30, 2021, when he reached maximum medical improvement for the allowed conditions.

{¶ 7} On April 23, 2019, Berry submitted an application for an additional award for VSSR. In his application, he asserted violations of Ohio Adm.Code 4123:1-3-13(C)(2), (E)(1), and (E)(7). Those provisions read as follows:

> (C) General requirements.
>
> * * *
>
> (2) Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins where trenches or excavations are made in locations adjacent to backfilled trenches or excavations, or where trenches or excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source.
>
> * * *
>
> (E) Excavations.
>
> (1) The walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means.
>
> * * *
>
> (7) If it is necessary to place or operate power shovels, derricks, trucks, materials, or other heavy objects on a level above and near an excavation, the side of the excavation shall be sheet-piled, shored, braced or sloped as necessary to resist the extra pressure due to such superimposed loads.

{¶ 8} On December 17, 2020, Berry's VSSR additional award application was heard by a staff hearing officer ("SHO"), who heard testimony from Berry and several other employees of Underground Utilities. In an order issued May 4, 2021, the SHO noted the parties "appear to agree that had a trench box been used, the injury probably would have been prevented," however the SHO denied Berry's VSSR application. (Stip. of Evidence, Appx. 276 at 3.) The SHO reasoned that, under Ohio Adm.Code 4123:1-3-13(C)(2), shoring or bracing is required if (1) a trench is made adjacent to backfilled trenches, or (2) when a trench is subjected to vibrations from the operation of machinery. Here, the SHO

determined there were no adjacent backfilled trenches. The SHO also found, based on the testimony of Underground Utilities employees, that at the time of the injury, the plate compactor excavator was 60 to 70 feet away from Berry, and thus too far away for vibrations from its operation to be felt in the trench. The SHO also rejected Berry's argument that the trench was subjected to vibrations from dump trucks, the large excavator, and the front loader, which would have necessitated shoring and bracing of the trench. The SHO looked to the testimony of Underground Utilities' controller and safety director, who noted that the excavator's weight was dispersed on a two-track design, and that the soil type the day of the incident was hard clay and therefore subsection Ohio Adm.Code 4123:1-3-13(C)(2) was not applicable.

{¶ 9} The SHO also noted that a safety inspection of an identical work set-up by the Ohio Bureau of Workers' Compensation ("BWC") just one month prior to the incident "found no issues with regard to the trench size, the lack of use of a trench box or other shoring methods, and use of machinery and equipment around the trench site that was concerning for vibration." (Stip. of Evidence, Appx. 276 at 4.) The SHO determined that, under Ohio Adm.Code 4123:1-3-13(E)(1), Berry did not establish there was a danger from moving ground and that evidence from testimony at the hearing indicated the ground was hard clay and not subject to compromise from water or other hazards. With respect to Ohio Adm.Code 4123:1-3-13(E)(7), the SHO determined that the excavator in use at the time of Berry's injury was not a "power shovel" because it did not have wenches and steel ropes, and neither the dump trucks nor mini excavators were near the edge of the trench. (Stip. of Evidence, Appx. 276 at 4.)

{¶ 10} On June 3, 2021, Berry filed a motion for rehearing on the SHO's decision, and on July 24, 2021, the commission denied Berry's motion, reasoning that he had "not submitted any new and relevant evidence nor shown that the order of the [SHO] * * * was based on an obvious mistake of fact or on a clear mistake of law." (Stip. of Evidence, Appx. 15 at 1.)

{¶ 11} On October 26, 2021, Berry filed his petition for a writ of mandamus requesting this court issue a peremptory or permanent writ of mandamus directing the commission to vacate its orders and grant Berry's VSSR application. (Compl. at 13.)

{¶ 12} On May 15, 2023, the magistrate rendered his decision, recommending this court deny Berry's request for a writ of mandamus. The magistrate found no abuse of discretion in the commission's determination that Ohio Adm.Code 4123:1-3-13(C)(2) did not require shoring and bracing of the trench due to vibrations from machinery. The magistrate pointed to evidence in the record, including testimony from Underground Utilities employees that the mini excavator with the plate compactor was at a distance where vibrations would not have been felt in the trench, that another Underground Utilities employee could not feel vibrations when he was in the trench prior to the incident, that BWC had performed a safety inspection one month prior to the incident and found no safety violations, and that there was no machinery, including the compactor, being actively used at the time of the accident. (Appended Mag.'s Decision at ¶ 63.)

{¶ 13} The magistrate also rejected Berry's argument that under Ohio Adm.Code 4123:1-3-13(E)(1), there was a danger of moving ground which would require a shoring system or some other means of securing the excavation. The magistrate concluded the evidence in the record demonstrated no abuse of discretion by the SHO in rejecting Berry's argument with respect to Ohio Adm.Code 4123:1-3-13(E)(1). (Appended Mag.'s Decision at ¶ 64.) The magistrate noted the SHO relied on testimony from an Underground Utilities employee who stated that while the dump trucks likely drove over the section of asphalt that collapsed the previous day, on the day of the incident, the dump trucks had not yet driven over that section of asphalt, that machinery and equipment were kept to a minimum along the trench, and, at the time of the incident, there was nothing beside the trench. (Appended Mag.'s Decision at ¶ 64.) The magistrate also noted testimony that the soil conditions were hard clay and that an Underground Utilities employee who was in the trench that day did not see any hazardous conditions, such as water or cracking, to indicate there was a danger of moving ground. (Appended Mag.'s Decision at ¶ 64.)

{¶ 14} Finally, the magistrate considered Berry's third argument that the SHO erred in not considering the large excavator as a heavy object above and near the trench Berry was working in, which would have then required bracing or shoring of the trench under Ohio Adm.Code 4123:1-3-13(E)(7). The magistrate again found no abuse of discretion, as the SHO's decision was supported by some evidence in the record. (Appended Mag.'s Decision at 30.) The magistrate pointed to the SHO's consideration of the testimony of

Underground Utilities employees that the excavator was not straddling the sides of the trench but was immediately north of the trench on intact asphalt, and that on the day of the injury, dump trucks had not driven over the asphalt that fell on Berry. Berry testified that the dump trucks were parked "maybe five" feet away from the trench. (Dec. 17, 2020 Tr. at 77.) The magistrate found this evidence supportive of the SHO's conclusion that there was "not any extra pressure due to superimposed loads on a level above and near an excavation that required bracing or shoring." (Appended Mag.'s Decision at ¶ 79.) The magistrate also reasoned that considering the excavator to be a "heavy object," which was "necessarily 'near' the excavation," under Ohio Adm.Code 4123:1-3-13(E)(7) would be too expansive a reading of the regulation, as it would require bracing or shoring in every instance where equipment is being used to excavate. (Appended Mag.'s Decision at 37.)

{¶ 15} On June 9, 2023, Berry submitted the following objections to the magistrate's decision:

> [1.] Relator strongly objects to the Magistrate's factual observation that "the excavator" was not "operating near the trench at the time of the cave-in."
>
> [2.] Relator Berry objects to the Magistrate's failure to recognize a conceded legal error in the SHO's application of Ohio Adm.Code 4123:1-3-13(E)(7), and the decision to answer in the first instance whether the large excavator triggered this provision due to its significant weight.
>
> [3.] Relator Berry objects to the Magistrate's consideration of the conditions in the soil in which the trench was dug, the lack of prior cave-ins, and prior inspections, which are not enumerated factors under any of the regulations at issue.
>
> [4.] Relator Berry objects to the Magistrate's focus on the timing of certain events around the workplace because timing is not explicitly factored into the regulatory scheme either.

{¶ 16} On February 28, 2024, this court requested supplemental briefing from the parties. Specifically, we asked the parties to consider:

> [W]hether, in consideration of Article II, Section 35 of the Ohio Constitution, the standard of review for interpretation of a specific safety requirement set forth in *State ex rel. United States Tubular Prods. v. Indus. Comm.*, 165 Ohio St.3d 85, 2021-Ohio-1174; *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983); *State ex rel. Allied Wheel Products, Inc. v.*

*Indus. Comm.*, 166 Ohio St. 47 (1956), and other decisions, is modified by the Ohio Supreme Court's decision in *In re Alamo Solar I, LLC*, ___ Ohio St.3d ___, 2023-Ohio-3778, ¶ 13-14, and *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022 Ohio 4677, 223 N.E. 3d 371, para. 3.

{¶ 17} On March 13, 2024, the parties filed their supplemental briefs.

## II. ANALYSIS

{¶ 18} To be entitled to relief in mandamus, Berry must establish that he has a clear legal right to relief, the commission has a clear legal duty to provide such relief, and that there is a lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 152 (1967).

{¶ 19} In regard to an application for an additional award for a VSSR, Berry must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer failed to comply with the requirement, and the failure to comply was the cause of the industrial injury in question. *State ex rel. Strawser v. Indus. Comm.*, 10th Dist. No. 22AP-330, 2023-Ohio-4327, ¶ 53. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989). The question whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission, subject only to appellate review for an abuse of discretion. *State ex rel. A-F Industries, ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136, 140 (1986). When the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not warranted. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Therefore, to be entitled to a writ of mandamus, a relator must show the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986).

{¶ 20} We also consider our review in light of changing judicial standards of review and agency deference. As the cases referenced in our request for supplemental briefing demonstrate, the Supreme Court of Ohio has previously held that the interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel.*

*Berry v. Indus. Comm.*, 4 Ohio St.3d 193, 194 (1983), citing *State ex rel. Allied Wheel Prod.*, *Inc. v. Indus. Comm.*, 166 Ohio St. 47, 50 (1956); *State ex rel. Humble v. Mark Concepts*, *Inc.*, 60 Ohio St.2d 77, 79 (1979).

{¶ 21} However, the Supreme Court has more recently questioned the practice of judicial deference to agencies' interpretations of statutes and their own regulations. In *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, the court stated:

> [I]t is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means. Thus, the judicial branch is never required to defer to an agency's interpretation of the law. As we explain, an agency interpretation is simply one consideration a court may sometimes take into account in rendering the court's own independent judgment as to what the law is.

(Emphasis omitted.) *Id.* at ¶ 3.

{¶ 22} The Supreme Court further spoke to judicial deference to agency interpretations of its own regulations in *In re Alamo Solar I, L.L.C.*, ___ Ohio St.3d ___, 2023-Ohio-3778:

> When a court defers to an agency's interpretation of its own regulation, it allows the agency to assume the legislative power (the rule drafter), the judicial power (the rule interpreter), and the executive power (the rule enforcer). Doing so violates the fundamental precept that the power of lawmaking and law exposition should not be concentrated in the same hands. *See generally* Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum.L.Rev. 612; *see also id.* at 645, quoting Montesquieu, *The Spirit of the Laws* bk. XI, ch. 6, at 157 (Anne Cohler et al. eds. & trans., 1989) (1768) ("'when legislative power is united with executive power * * * in a single body * * * there is no liberty'").

*Id.* at ¶ 14.

{¶ 23} In light of this precedent, we take pause and consider whether an abuse of discretion standard of review is appropriate in a mandamus action for an alleged VSSR.[1] As the Supreme Court has made clear, deferring to an agency's interpretation of the law

---

[1] We note that the Supreme Court has not spoken about the extent to which a court should defer to the commission's interpretation of a specific safety rule in light of *Alamo*, *Solar*, and *TWISM*. The court recently referenced this issue in *State ex rel. Cassens Corp. v. Indus. Comm.*, ___ Ohio St.3d ___, 2024-Ohio-526, ¶ 19, fn. 6, but declined to address it as the case was decided on other grounds.

allows the agency to improperly sway into the domain of judicial purview, and we find the commission's interpretation of its own specific safety regulations no different. While we note that questions of credibility and the weight to be given to evidence are clearly within the discretion of the commission as the fact finder, *see State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981), interpretation of a specific safety regulation in question is not. The Supreme Court stated in *Alamo*, "we will independently interpret the regulations at issue in these cases. If the text of a regulation is clear, then we apply it as written and stop right there. But if we determine that the text is ambiguous, we may consider the board's interpretation only for its persuasive power." *Alamo* at ¶ 44-45. The court noted that, when interpreting text involving common words used in their ordinary sense, there "will rarely, if ever, be a need for a court to look to an agency interpretation," as this is "well within the judiciary's core competence." *TWISM* at ¶ 47, citing *Sarasota Mem. Hosp. v. Shalala*, 60 F.3d 1507, 1511 (11th Cir.1995). However, the agency's interpretation on specialized matters that involve technical meaning within the agency's core competency may serve the court. *Id.*

{¶ 24} Therefore, in reviewing the commission's interpretation of a VSSR, we may look to the commission's interpretation for its persuasive power if the text of the regulation is ambiguous. If the text is not ambiguous, however, we will read the safety requirement according to the common and ordinary meaning of the words used.

### A. Berry's Second Objection

{¶ 25} We now turn to Berry's objections to the magistrate's decision and, for ease of discussion, we first consider Berry's second objection. Here, Berry argues the commission erred in failing to consider and determine that the large excavator immediately north of the trench on the day of Berry's injury was a "heavy object[] on a level above and near [the] excavation" under Ohio Adm.Code 4123:1-3-13(E)(7). The SHO found that the only pieces of equipment being used at the time were the excavator and two mini excavators. (Stip. of Evidence, Appx. 276 at 3.) The SHO found that the large excavator was not a "power shovel" under Ohio Adm.Code 4123:1-3-13(E)(7) because it was not controlled and powered by wenches and steel ropes typical of power shovels. (Stip. of Evidence, Appx. 276 at 3.) However, the SHO did not analyze whether the large excavator was a "heavy object" at a "level above and near" the excavation, triggering a requirement for sheet-piling, shoring, bracing, or sloping. (Stip. of Evidence, Appx. 276 at 3.) Berry

argues this constitutes a legal error by the commission, and he argues that the magistrate erred by finding no abuse of discretion in that regard.

{¶ 26} We first consider whether Ohio Adm.Code 4123:1-3-13(E)(7) is ambiguous. As discussed above, if the text of the regulation is ambiguous, we may look to the commission's interpretation for its persuasive power. Ohio Adm.Code 4123:1-3-13(E)(7) states:

> If it is necessary to place or operate power shovels, derricks, trucks, materials, or other heavy objects on a level above and near an excavation, the side of the excavation shall be sheet-piled, shored, braced or sloped as necessary to resist the extra pressure due to such superimposed loads.

{¶ 27} The plain language of the regulation is not ambiguous. The regulation simply states that if heavy objects, including the listed categories of equipment, must be placed or operated on a level above and near an excavation, that excavation should utilize an additional safeguard to resist the extra pressure on the side of the excavation. While Ohio Adm.Code 4123:1-3-13 does not contain a definition of "near," Merriam Webster defines it as "at, within, or to a short distance or time." https://www.merriam-webster.com/dictionary/near (accessed July 9, 2024). Merriam Webster also defines "heavy" as "having great weight." *See Merriam Webster's Dictionary* at https://www.merriam-webster.com/dictionary/heavy (accessed July 9, 2024).

{¶ 28} Here, a large excavator, a dump truck, a pile of fill dirt, a front loader, and mini excavator were at the site where Berry was working. We now look to whether any of the equipment triggered under subsection Ohio Adm.Code 4123:1-3-13(E)(7) was also "near," in its common and ordinary meaning, the excavation where Berry was working.

{¶ 29} We note the mini excavator and front loaders were placed at the opposite end of the trench approximately 60 to 70 feet away and therefore not near the trench where Berry was working. However, the large excavator was placed directly in front of where Berry was working. As noted in testimony, Berry worked in tandem with the large excavator. As the large excavator would dig the trench, Berry would stand in the trench to attempt to locate gas or water lines. In fact, the operator of the large excavator testified that he would hop in and out of the large excavator to assist Berry as they dug out the trench. By operation, the large excavator needed to be near, or within a short distance of, the trench in order to dig it. Also near the trench was the dump truck, which was parked close enough

to the trench and the large excavator that the excavator's arm could place dirt from the trench into the dump truck. By operation, the dump truck and large excavator needed to be near the trench where Berry was working, and the facts in the record support such conclusion.

{¶ 30} The SHO's decision and the magistrate both noted testimony or evidence in the record that they believed supported a finding that the dump truck and excavator were not near the trench, but the cited evidence does not support that finding. The SHO found that the dump truck was not near the edge of the trench, based on cited testimony from the operator of the large excavator. However, in fact, the operator stated, "the dump truck would not have touched [the piece of asphalt that fell on Berry]," not that it was not "near" the trench. (Dec. 17, 2020 Tr. at 13.) The magistrate similarly refuted that the excavator was not near the trench according to the testimony of an Underground Utilities employee who indicated the excavator was not straddling the sides of the excavation. We find this is beside the point. Whether the excavator could have been straddling the trench does not mean it was not "near" the trench in the common and ordinary meaning of the word. As we have already discussed, the excavator and dump trucks had to have been near the trench where Berry was working, by their very operation and function at the site.

{¶ 31} Having established what equipment was "near," we must also consider whether the large excavator and dump truck are "heavy" by its common and ordinary meaning. Here, the large excavator was estimated to weigh approximately 40,000 pounds and can only be reasonably described as having a great weight. The dump trucks that would sit next to the large excavator weigh an estimated 15,000 pounds and would carry 19 tons or 38,000 pounds of fill dirt back and forth from the trench. These trucks also fall within the definition of "heavy object." (Stip. of Evidence, Appx. 276 at 3.)

{¶ 32} In its supplemental briefing, the commission argues that it did not interpret the safety regulations but, instead, simply applied the facts it found credible and persuasive to the specific safety regulations. We do not agree. Implicit within the commission's application of the facts was its analysis of the meaning of the safety regulation. This is most notable in the SHO's determination that the large excavator was not a "power shovel," as that term is used in the regulation. (Stip. of Evidence, Appx. 276 at 4.) However, as the magistrate noted "whether the excavator was a 'power shovel' is not determinative of

whether there was a violation of Ohio Adm.Code 4123:1-3-13(E)(7) here, as a violation can also occur when trucks, materials or other heavy objects are placed or operated on a level above and near an excavation without adequate shoring." (Appended Mag.'s Decision at ¶ 65.) Here, the commission erred by failing to consider whether "heavy objects" near the excavation on the day of Berry's injury triggered a requirement of sheet-piling, shoring, bracing, or sloping under Ohio Adm.Code 4123:1-3-13(E)(7).

{¶ 33} Applying the plain and unambiguous meaning of Ohio Adm.Code 4123:1-3-13(E)(7), we agree with Berry that the commission abused its discretion by finding no violation of that section. Underground Utilities violated Ohio Adm.Code 4123:1-3-13(E)(7) by failing to employ sheet-piling, shoring, bracing, or sloping to resist the extra pressure from the superimposed loads created by the large excavator, as well as the dump truck and fill dirt. As noted by the SHO, the parties do not dispute that had a trench box been used to shore and brace the trench, the injury would have probably been prevented. (Stip. of Evidence, Appx. 276 at 3.) Accordingly, we sustain Berry's second objection to the magistrate's decision. We find Berry has established that there was an applicable and specific safety requirement that was in effect at the time of his injury, the employer failed to comply with the requirement, and the failure to comply was the cause of the industrial injury in question. *Strawser*, 2023-Ohio-4327, at ¶ 53.

## B. Berry's First Objection

{¶ 34} We now consider Berry's first objection to the magistrate's decision, which relates to Berry's claimed violation of Ohio Adm.Code 4123:1-3-13(C)(2). Berry argues that the magistrate erred in making a factual determination that the large excavator was not " 'operating near the trench at the time of the cave-in.' " (Objs. to Mag.'s Decision at 11, quoting Appended Mag.'s Decision at ¶ 63.) Berry argues that, under Ohio Adm.Code 4123:1-3-13(C)(2), shoring or bracing of the trench was necessary due to vibrations from the operation of machinery. The entirety of the subsection reads:

> Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins where trenches or excavations are made in locations adjacent to backfilled trenches or excavations, or where trenches or excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source.

{¶ 35} We again look to whether the regulation is ambiguous and find it is not. Subsection (C)(2) of Ohio Adm.Code 4123:1-3-13 requires shoring and bracing of trenches or excavations when they are adjacent to other backfilled trenches or excavations or are subjected to vibrations. The SHO looked to the common and ordinary definition of adjacent as "not distant, nearby; having a common end point or border." (Stip. of Evidence, Appx. 276 at 3.) There were no other trenches adjacent or near to the portion of trench where Berry was working, and therefore it did not trigger subsection (C)(2) of Ohio Adm.Code 4123:1-3-13. While we agree with Berry that the large excavator was near the trench, as discussed above, that fact is not dispositive as to whether there was a VSSR with respect to Ohio Adm.Code 4123:1-3-13 (C)(2). "[W]here the record contains evidence which supports the commission's factual findings, this court will not disturb that determination." *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 283 (1975); *see also State ex rel. Coen v. Indus. Comm.*, 126 Ohio St. 550 (1933); *State ex rel. Mees v. Indus. Comm.*, 29 Ohio St.2d 128 (1972); *State ex rel. Breno v. Indus. Comm.*, 34 Ohio St.2d 227 (1973). The existence of vibrations is a question of fact. An Underground Utilities employee stated that he could not feel vibrations, from the excavator or other machinery, when working in the portion of trench where Berry was injured on the date of the injury. That testimony constitutes some evidence supporting the SHO's finding of no violation under Ohio Adm.Code 4123:1-3-13(C)(2). We therefore overrule Berry's first objection to the magistrate's decision.

### C. Berry's Third and Fourth Objections

{¶ 36} We now consider Berry's third and fourth objections to the magistrate's decision, which both argue the commission and magistrate relied upon improper factors in denying Berry's VSSR application. Specifically, Berry argues the magistrate and the commission improperly considered the conditions of the soil in and around the trench, the lack of previous cave-ins, a BWC safety inspection that occurred before the incident, and the timing of events that may have impacted the trench. Berry argues these are not enumerated factors under any of the regulations at issue and that it was legal error for the commission and the magistrate to consider them. As we have already found a VSSR in regard to Ohio Adm.Code 4123:1-3-13(E)(7), we examine Berry's arguments as they pertain to subsection (C)(2) and subsection (E)(1), which focus on excavations and trenches that are subject to vibrations, and excavations which are subject to moving ground.

{¶ 37} Berry's objections center around the facts and factors that the commission considered in weighing whether the trench was subject to vibration or moving ground, rather than the interpretation of the regulations at issue. In reviewing the commission's factual findings, this court looks to whether there is some evidence in the record to support the commission's decision. Here, there is some evidence in the record to support the commission's determination that there was not a safety violation under Ohio Adm.Code 4123:1-3-13(C)(2) and (E)(1). Whether the magistrate and SHO were entitled to consider what Berry believes to be improper factors does not impact our decision, as there was evidence concerning undisputedly proper factors that support the SHO's and the magistrate's decisions regarding subsection (C)(2) and subsection (C)(1). We agree with the magistrate and find no abuse of discretion here. We therefore overrule Berry's third and fourth objections to the magistrate's decision.

## III. CONCLUSION

{¶ 38} Following an independent review of this matter, we overrule Berry's first, third, and fourth objections, and we sustain his second objection. We adopt the magistrate's findings of facts and conclusions of law, except those pertaining to Ohio Adm.Code 4123:1-3-13(E)(7). Having sustained Berry's second objection to the magistrate's decision, we grant Berry's request for a writ of mandamus and order the commission to vacate its decision denying Berry's request for a VSSR award and issue a VSSR award for Berry consistent with this decision.

*Writ of mandamus granted.*

JAMISON, J., concurs.
DORRIAN, J., concurs in part and dissents in part.

DORRIAN, J., concurring in part and dissenting in part.

{¶ 39} I respectfully concur in part with and dissent in part from the majority. I concur because I would grant Berry's request for a writ of mandamus. I respectfully dissent, however, because I would grant a limited writ for the purpose of sending this action back to the commission to determine in the first instance whether the large excavator constituted a heavy object placed or operating on a level above and near the excavation and thus triggered the requirements of Ohio Adm.Code 4123:1-3-13(E)(7).

{¶ 40} Moreover, I agree with the majority that it is appropriate to revisit the proper standard of review in VSSR cases in light of *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, and *In re Application of Alamo Solar I, L.L.C.*, ___ Ohio St.3d ___, 2023-Ohio-3778, and I write further to offer additional context for this conclusion.

{¶ 41} Generally, interpretation of a regulation is a question of law that is reviewed de novo. *See, e.g., Minges v. Ohio Dept. of Agriculture*, 10th Dist. No. 12AP-738, 2013-Ohio-1808, ¶ 13 ("The interpretation of statu[t]es and administrative rules presents a question of law."); *Cincinnati v. Nicholson*, 1st Dist. No. C-120332, 2013-Ohio-708, ¶ 8 ("Interpretation of an administrative regulation presents a question of law that we review de novo."). Despite that general principle, since the mid-1950s the Supreme Court of Ohio has held that interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.*, 166 Ohio St. 47, 50 (1956). Although that holding has been regularly cited during the ensuing decades, close scrutiny demonstrates the Supreme Court offered little explanation as to why such deference should be granted to the commission in VSSR cases.

{¶ 42} VSSR awards are "specifically authorized in Article II, Section 35 of the Ohio Constitution." *State ex rel. Camaco, L.L.C. v. Albu*, 151 Ohio St.3d 330, 2017-Ohio-7569, ¶ 5. That provision was most recently amended in 1923, with the amendment stating, in relevant part, that the commission "shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, [sic] enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final." Addressing the commission's authority under the amendment only two years after it took effect, the Supreme Court stated that the finality of the commission's decisions "extends *only* to the determination whether, in fact, the injury, etc., resulted because of the failure to comply with such specific requirement." (Emphasis added.) *Slatmeyer v. Indus. Comm.*, 115 Ohio St. 654, 656 (1926). The court further declared that the finality of the commission's decisions *did not* extend to questions of law:

> The language of the Constitution is plain. The commitment of
> finality extends only to the single question of fact to be heard

and determined. While the constitutional amendment may have contemplated that the industrial tribunal could dispose of a question of fact as well as a court constituted for that purpose, it no doubt recognized that upon legal, fundamental, or jurisdictional questions, action by a court would be necessary. At all events, no legal questions were committed by the Constitution to the final jurisdiction of the commission.

*Id.* at 657.

{¶ 43} Notwithstanding this declaration in *Slatmeyer*, 30 years later in *Allied Wheel*, the court stated that "the determination of disputed factual situations *as well as the interpretation of a specific safety requirement* is within the final jurisdiction of the Industrial Commission." (Emphasis added.) *Allied Wheel* at 50. The *Allied Wheel* decision provided no explanation for the court's conclusion that interpretation of a specific safety requirement was within the final jurisdiction of the commission, and the decisions cited in support of that conclusion offer little guidance. Nonetheless, *Allied Wheel* became the governing standard, regularly applied by the Supreme Court and this court. *See, e.g., State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, 122 Ohio St.3d 428, 2009-Ohio-3502, ¶ 10; *State ex rel. Thompson Elec., Inc. v. Indus. Comm.*, 10th Dist. No. 16AP-23, 2017-Ohio-7611, ¶ 56.

{¶ 44} As the majority notes, the Supreme Court recently rejected the concept of broad judicial deference to administrative agencies in the interpretation of regulations:

Under federal doctrine, a federal court must defer to an agency's interpretation of an ambiguous regulation that the agency has promulgated. *See Auer v. Robbins*, 519 U.S. 452 * * * (1997). But the same separation-of-powers principles that led us to reject *Chevron*-style deference in *TWISM* also apply to deference of the *Auer* variety. *Compare TWISM* at ¶ 3, 29 *with Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 865 * * * (1984).

When a court defers to an agency's interpretation of its own regulation, it allows the agency to assume the legislative power (the rule drafter), the judicial power (the rule interpreter), and the executive power (the rule enforcer). Doing so violates the fundamental precept that the power of lawmaking and law exposition should not be concentrated in the same hands. * * * Thus, we will independently interpret the regulations at issue in these cases. If the text of a regulation is clear, then we apply it as written and stop right there. But if we determine that the

> text is ambiguous, we may consider the board's interpretation
> only for its persuasive power.

*Alamo Solar* at ¶ 13-14.

{¶ 45} The general principles underlying *Alamo Solar*, coupled with the Supreme Court's original view of the commission's authority expressed in *Slatmeyer*, suggest that to the extent an appeal raises questions of law, such as the interpretation of a specific safety regulation, we need not give broad deference to the commission. Therefore, I concur with the majority that we are not required to defer to the commission's interpretation of specific safety regulations but may consider such interpretation for its persuasive power when interpreting an ambiguous regulation.

{¶ 46} Applying the level of deference outlined in *Alamo Solar* and *TWISM*, I concur with the majority's decision to sustain Berry's second objection to the extent it rejects the SHO's interpretation that Ohio Adm.Code 4123:1-3-13(E)(7) did not apply to the large excavator because it was not a power shovel. I further concur with the majority's decision to the extent it looks to the dictionary for the common and ordinary meaning of "heavy" and "near." However, I dissent from the majority's decision to the extent it makes the factual determination in the first instance that the large excavator was a "heavy object" and was located "near" the trench. I also dissent from the majority's decision to the extent it makes factual determinations that the dump truck and fill dirt were "heavy objects" located "near" the trench because relator did not object to the commission's or magistrate's determinations regarding the same. Therefore, I differ from the majority as to the extent of the appropriate writ to be issued.

{¶ 47} In its analysis of Berry's second objection, the majority begins by interpreting the common and ordinary meaning of the terms "heavy" and "near" as used in Ohio Adm.Code 4123:1-3-13(E)(7). The majority then goes on to analyze whether the large excavator, dump truck, pile of fill dirt, front loader, or mini excavator were "near" the excavation where Berry was working. After concluding the large excavator and dump truck were near the excavation, the majority analyzes whether those items constituted "heavy objects" for purposes of the regulation.

{¶ 48} Berry's second objection to the magistrate's decision asserts the SHO erred as a matter of law by concluding that Ohio Adm.Code 4123:1-3-13(E)(7) did not apply to

the large excavator and that the magistrate erred by determining in the first instance whether the large excavator triggered the regulation. Because Berry's second objection only refers to the large excavator, I would not consider whether the other equipment or the pile of fill dirt triggered the requirements of Ohio Adm.Code 4123:1-3-13(E)(7) in this case.

{¶ 49} As noted above, I concur with the majority's decision rejecting the staff hearing officer's ("SHO") interpretation that Ohio Adm.Code 4123:1-3-13(E)(7) did not apply to the large excavator because it was not a power shovel. I would further reject the magistrate's statement that "to find that the 'heavy' excavator that was digging the trench here automatically triggered the applicability of Ohio Adm.Code 4123:1-3-13(E)(7) would essentially make subsection (E)(7) applicable to all trenching operations, given excavators, backhoes, and track hoes are necessarily 'near' the excavation they are digging. There is no authority for such an expansive reading of subsection (E)(7)." (Appended Mag.'s Decision at ¶ 79.) Contrary to the magistrate's conclusion, I would find that the terms of the regulation itself provide support for such an interpretation. Ohio Adm.Code 4123:1-3-13(E)(7) states that shoring or bracing must be used if it is necessary to place or operate certain equipment, materials, or other heavy objects above and near the excavation. The use of the phrase "if it is necessary" implies that it is not always necessary to place or operate equipment on a level above and near an excavation. Ohio Adm.Code 4123:1-3-13(E)(7) provides that, when it is necessary to do so, measures must be taken to "resist the extra pressure due to such superimposed loads."

{¶ 50} Additionally, although I concur with the majority that the magistrate erred in determining whether the large excavator triggered the requirements of Ohio Adm.Code 4123:1-3-13(E)(7), I would not perform the analysis of whether the large excavator triggered the requirements of Ohio Adm.Code 4123:1-3-13(E)(7). Although there was testimony about the weight and location of the large excavator, the SHO did not make specific findings regarding those issues; instead, the SHO concluded the rule did not apply to the large excavator because it was not a "power shovel." The Supreme Court has held that " '[f]actual questions relevant to proof of a [violation of a specific safety requirement] rest exclusively within the discretion of the commission.' " *Albu* at ¶ 29, quoting *State ex rel. Scott v. Indus. Comm.*, 136 Ohio St.3d 92, 2013-Ohio-2445, ¶ 12. *See also State ex rel. Hayes Lemmerz Internatl. Commercial Hwy. v. Indus. Comm.*, 10th Dist. No. 09AP-908, 2011-Ohio-2161,

¶ 19 ("The commission should be given an opportunity to consider legal and factual issues in the first instance and decide them, rather than having such issues determined in the first instance by this court in a mandamus action, which is essentially contrary to the purposes of mandamus."). Accordingly, I would grant a *limited* writ only for the purpose of sending this action back to the commission to determine, in the first instance, whether the large excavator constituted a "heavy object" placed or operated "on a level above and near" the excavation for purposes of Ohio Adm.Code 4123:1-3-13(E)(7). *See State ex rel. Cassens Corp. v. Indus. Comm.*, 10th Dist. No. 21AP-93, 2022-Ohio-2936, ¶ 16-20 (Dorrian, J., concurring in part and dissenting in part).

{¶ 51} With respect to Berry's first objection, I find the magistrate's statement that "[i]n the present case, there was testimony that * * * neither the excavator nor compactor plate was operating near the trench at the time of the cave-in" is confusing at best. (Appended Mag.'s Decision at ¶ 73.) It is confusing for two reasons. First, the magistrate's statement to which relator objects used the term "near," a term, as noted above and in the majority opinion, that is expressly used in Ohio Adm.Code 4123:1-3-13(E)(7). However, the magistrate's statement was made in the context of analyzing whether the machinery operating at the worksite subjected the trench to vibrations which would require additional precautions of shoring and bracing pursuant to Ohio Adm.Code 4123:1-3-13(C)(2), not (E)(7). Therefore, I would not construe the magistrate's statement as making a factual observation with regard to the application of Ohio Adm.Code 4123:1-3-13(E)(7) and, consistent with the discussion above, would grant a limited writ to have the commission determine in the first instance whether, for purposes of Ohio Adm.Code 4123:1-3-13(E)(7), the large excavator was "near" the trench and if it was a "heavy object." Second, the magistrate's statement is not clear as to which excavator it was referring. The SHO's decision explained there were three excavators in use on the project: the large excavator that was digging the trench, a mini excavator that was being used to help lay the pipe, and another mini excavator equipped with a compactor plate being used to compact back fill dirt after the pipe had been installed. Therefore, it is unclear which "excavator" the magistrate was referring to when asserting there was testimony that the excavator was not operating near the trench at the time of the cave-in.

{¶ 52} Ultimately, the magistrate concluded that "the commission could reasonably infer that any machinery operating at the worksite did not subject the trench to vibrations." (Appended Mag.'s Decision at ¶ 73.)  I agree with the majority's conclusion that the existence of vibrations is a question of fact and there was some evidence to support the commission's conclusion that there was no violation of Ohio Adm.Code 4123:1-3-13(C)(2). Therefore, I concur in overruling Berry's first objection.

{¶ 53} I also concur in overruling Berry's third and fourth objections to the magistrate's decision.

{¶ 54} For these reasons, I respectfully concur in part with and dissent in part from the majority.

—————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Curtis A. Berry, | : | |
| Relator, | : | |
| v. | : | No. 21AP-548 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 15, 2023

*Plevin & Gallucci Co.*, *L.P.A.*, *David R. Grant*, and *Paul W. Flowers Co.*, *L.P.A.*, *Paul W. Flowers*, *Louis E. Grube*, and *Melissa A. Ghrist*, for relator.

*Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

*Frost Brown Todd LLC*, *Noel C. Shepard*, and *Steven M. Tolbert*, *Jr.*, for respondent Underground Utilities Inc.

IN MANDAMUS

{¶ 55} Relator, Curtis A. Berry ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that found respondent Underground Utilities, Inc. ("employer") did not violate a specific safety requirement ("VSSR").

Findings of Fact:

{¶ 56} 1. On July 24, 2017, claimant sustained a work-related injury while working as a pipe layer for the employer when a section of asphalt detached from the roadway and fell into the excavated trench in which claimant was working. The section of asphalt landed above claimant's hip, causing injuries to claimant. Claimant's workers' compensation claim was allowed for fracture of superior rim of right pubis for closed fracture; contusion of right thigh; contusion of lower back and pelvis; nondisplaced fracture of anterior wall of right acetabulum; contusion of right hip; protrusion with effacement thecal sac L5-S1; protrusion with effacement thecal sac L4-L5; thigh hematoma, right; hip hematoma, right; substantial aggravation of pre-existing spinal stenosis lumbar region L3-L5; substantial aggravation of pre-existing spinal stenosis lumbosacral region L5-S1; and intervertebral disc displacement at L3-L4.

{¶ 57} 2. At the time of the injury, the employer was installing a new water main. To install the new water main, workers sawed two parallel lines, 28 to 32 inches apart, into the asphalt roadway. A large excavator straddled the sawed lines, removing asphalt and dirt to create a trench behind it as it backed northerly down the street on solid roadway. As the excavator removed dirt and asphalt, it placed the dirt and asphalt in dump trucks that sat parallel to the excavator and at least five feet from the excavated trench. The dump trucks dumped the debris and returned with fresh fill dirt to be dumped beside the newly excavated trench at the opposite end of the trench. A front loader would dump fresh fill dirt over the new water main. Two smaller mini-excavators were also used in the filling operation, with one mini-excavator using a plate compactor to pound and compact the fresh fill dirt. The vibrations from the plate compactor could be felt within a 20-to-30-foot radius.

{¶ 58} 3. Claimant was working directly in front of the large excavator as it dug the trench, locating buried utility lines in the path of the excavation. The trench depth at the beginning of the trench was five to six feet deep and was stabilized with a trench box, but the area where claimant was working at the time of the accident was approximately 42 inches deep and was not stabilized by a trench box. Neither OSHA regulations nor Ohio Adm.Code 4123:1-3-13(D) required shoring of trenches under five feet deep. The soil was hard clay. The area where the front loader and compactor were being used was

approximately 60 to70 feet from claimant at the time of the accident, but these machines were not operating at the time of the accident.

{¶ 59} 4. There was disagreement as to the size of the section of roadway that fell into the trench, but it was anywhere from 12 to18 inches wide, 6 to 12 inches thick, and 15 to 30 feet long. The section of roadway landed above claimant's hip, and a machine had to be used to lift it off of claimant. The dump truck was not operating at the time of the accident, but Shawn Swihart, the operator of the large excavator, testified that he was dumping a bucket of soil into the dump truck at the time of the accident. The large excavator was several feet away from the trench, and the dump trucks were at least five feet from the trench.

{¶ 60} 5. On April 23, 2019, claimant filed an application for an additional award for VSSR, alleging that the employer had violated Ohio Adm.Code 4123:1-3-13(C)(2), (E)(1), and (E)(7).

{¶ 61} 6. Ohio Adm.Code 4123:1-3-13 provides, in pertinent part:

> (C) General requirements.
>
> * * *
>
> (2) Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins where trenches or excavations are made in locations adjacent to backfilled trenches or excavations, or where trenches or excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source.
>
> * * *
>
> (E) Excavations.
> (1) The walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means. (See appendix "Table 13-1 and Table 13-2").
>
> * * *
>
> (7) If it is necessary to place or operate power shovels, derricks, trucks, materials, or other heavy objects on a level above and near an excavation, the side of the excavation shall be sheet-piled, shored, braced or sloped as necessary to resist the extra pressure due to such superimposed loads.

{¶ 62} 7. On December 17, 2020, the matter was heard before a staff hearing officer ("SHO") for the commission. In a May 4, 2021, order, the SHO denied the VSSR application,

finding the following: (1) the application for VSSR is denied; (2) the testimony of claimant, Swihart, and foreman Gerald Crowner provided a consistent description of the worksite and how the injury occurred; (3) Ohio Adm.Code 4123:1-3-13(C)(2) mandates the use of shoring and bracing to prevent slides or cave-ins in two situations: (a) when the trench is made adjacent to backfilled trenches, or (b) when trenches are subject to vibrations from the operation of machinery; (4) the incident did not involve a cave-in but could arguably be construed as a slide; (5) the area of the accident was not adjacent to the area of backfilled trench, as the nearest area of backfilled trench was more than 20 feet away from claimant; (6) the compactor plate was operating 60 to 70 feet away from claimant; (7) the testimony was that you could feel vibrations from the compactor in a 20 to 30-foot radius; (8) Swihart said he did not feel vibrations from the compactor or any other machinery while he was in the trench with claimant; (9) Swihart testified that the dump truck did not drive over the part of the road that fell; (10) Swihart testified that a trench box was in use over the top of the ball of the pipe that had just been installed and located behind where claimant was working; (11) Joseph Schwag, controller and safety director, noted that the weight of the large excavator is spread out due to the two-track design, and the soil depth was good and the soil type was hard clay; (12) Crowner testified that machinery and equipment are kept to a minimum along the side of the trench, and soil conditions can change throughout the day, so ongoing assessments of the trench are made; (13) the road was closed to vehicular traffic during the work day; (14) the SHO is not persuaded that claimant has established the trench was subjected to vibration from the operation of machinery so as to require shoring, bracing, or sloping; (15) therefore, the SHO does not find Ohio Adm.Code 4123:1-3-13(2) applicable; (16) the set-up of work, as described by claimant, Schwag, Swihart, and Crowner, was the same that was being used at the time the Bureau of Workers' Compensation ("BWC") Safety Division visit on June 20, 2017, just over one month before the accident; (17) the BWC inspector, Paula Burleson, found no issues with regard to the trench size, the lack of use of a trench box or other shoring methods, and use of machinery and equipment around the trench site that was concerning for vibration; (18) Schwag testified the setup of the project on the date of injury was basically the same as it was at the time of the visit by the BWC; (19) with regard to Ohio Adm.Code 4123:3-13(E)(1), the SHO finds claimant has not established he was exposed to danger from moving ground; (20) per Crowner, the employer had never had an incident of asphalt roadway breaking off and

falling into a working trench; (21) the ground was hard clay without any evidence of compromise from water or any other hazards; (22) machinery and traffic were not being utilized directly beside the trench; (23) there was insufficient evidence to establish the use of a dump truck would constitute moving ground; (24) with regard to Ohio Adm.Code 4123:3-13(E)(7), the SHO finds the only equipment being used was an excavator and two mini-excavators; (25) the excavator in use was not a power shovel because the digging arm was not controlled and powered by wenches and steel ropes; thus, the only applicable equipment in this subsection are the dump truck and mini-excavators; (26) Swihart testified that the dump truck and mini-excavators were not near the edge of the trench; and (27) the BWC observed the set up being used and found no need for bracing, shoring, or sloping for any extra pressure due to superimposed loads.

{¶ 63} 8. On June 3, 2021, claimant filed a request for rehearing, which the commission denied on July 24, 2021.

{¶ 64} 9. On October 26, 2021, claimant filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 65} For the reasons that follow, it is this magistrate's decision that this court should not issue a writ of mandamus.

{¶ 66} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 67} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 68} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio

St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Industries, ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136 (1986). When the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *State ex rel. Frank Brown & Sons, Inc. v. Indus., Comm.*, 37 Ohio St.3d 162 (1988).

{¶ 69} In the present matter, claimant asserts that the commission erred and abused its discretion, arguing the following: (1) the trench was subjected to vibration from the operation of machinery so as to require shoring, bracing, or sloping, as required by Ohio Adm.Code 4123:3-13(C)(2); (2) claimant was exposed to danger from moving ground, so as to trigger Ohio Adm.Code 4123:3-13(E)(1); and (3) Ohio Adm.Code 4123:3-13(E)(7) applied because the large excavator fell within its purview, and machinery (the large excavator and dump truck) and materials (clean fill dirt) were being utilized directly beside the trench. Thus, claimant asserted that the employer violated Ohio Adm.Code 4123:3-13(C)(1), (E)(1), and (E)(7).

{¶ 70} Claimant's first argument pertains to Ohio Adm.Code 4123:3-13(C)(1), which requires, in pertinent part, shoring and bracing to prevent slides or cave-ins when trenches or excavations are subjected to vibrations from the operation of machinery. Claimant contends that, in this case, the trench was subjected to vibrations throughout the day from the following: (1) the compactor plate, which dispersed vibrations at least 20 feet away and disturbed the section of the trench that fell, even though it was not in operation at the time of the accident; and (2) idling dump trucks and a large excavator that were parked mere feet away from claimant in the trench at the time of the accident. Claimant cites this court's decision in *State ex rel. Hickerson Excavating, Inc. v. Kottenbrock*, 10th Dist. No. 10AP-92, 2011-Ohio-1887, for the proposition that Ohio Adm.Code 4123:1-3-13(C)(2) applied even in the absence of evidence that certain machinery had been vibrating. In the present case, claimant argues, there is no dispute that vibrating machinery was operating within 10

to 15 feet of the trench; thus, Ohio Adm.Code 4123:1-3-13(C)(2) required the employer to utilize specific safety precautions, which it did not do.

{¶ 71} With regard to Ohio Adm.Code 4123:3-13(C)(2), the SHO found that the compactor plate was operating 60 to 70 feet away from claimant; there was testimony that you could feel vibrations from the compactor in a 20 to 30-foot radius; Swihart said he did not feel vibrations from the compactor or any other machinery while he was in the trench with claimant; Swihart testified that the dump truck did not drive over the spot of the road that fell; Swihart testified that a trench box was in use over the top of the ball of the pipe that had just been installed and located behind where claimant was working; Schwag noted that the weight of the large excavator is spread out due to the two-track design, and the soil depth was good and the soil type was hard clay; Crowner testified that machinery and equipment are kept to a minimum along the side of the trench, and soil conditions can change throughout the day, so ongoing assessments of the trench are made; and the BWC visited the site about one month before the accident and found no issues with the trench, lack of shoring, or use of machinery.

{¶ 72} After reviewing the evidence in the record and the SHO's findings, the magistrate can find no abuse of discretion. The SHO's findings were supported with testimony and evidence, notably testimony from Swihart, Crowner, and Schwag. Although there was undoubtedly vibrations from the compactor and other machinery, including idling dump trucks, around the worksite, Swihart, the employer's excavator operator, testified that the mini-excavator with the plate compactor attachment was 60-70 feet away from where the cave-in occurred. He also testified that he had been in the trench with claimant shortly before the accident occurred, and he did not see any cracking, water, undermining, or anything hazardous when assessing the trench. Swihart also said he did not feel vibrations from the compactor or any other machinery at any time while he was in the trench. Crowner, the employer's foreman, testified that at some point trucks probably drove by the trench in the previous day and that you can feel the ground shake within a 20-foot, maybe less, radius when the compactor plate is being used. However, Crowner testified that the compactor plate was not being used at the time of the accident, and there was no active machinery or vibration or anything that could have caused the cave-in. As the magistrate found, Crowner also testified that machinery and equipment are kept to a

minimum along the side of the trench. Crowner stated that once the excavation is occurring, there shouldn't be anything beside the trench, and there was not in this particular case. Crowner also checks the soil conditions throughout the day for changes, and the trench consisted of hard clay. Joseph Schwag, the employer's safety director, testified that the BWC safety consultant visited the site about one month before the incident and found that the failure to use a trench box in a four-foot-deep trench did not alarm her and there was no code violation. Schwag stated that, on the day the BWC safety consultant visited, the site would have been a typical day of doing trench work with machinery in the same general locations as the date of the accident.

{¶ 73} As for *Hickerson*, although that case and the present case both involved vibrating machinery being operated near a trench, the present factual scenario is different than that in *Hickerson*. In *Hickerson*, the soil had not been tested, an excavator was operating nearby at the time of the cave-in, there was water or moisture in the trench, and the trench was deeper than five feet. In the present case, there was testimony that the soil had been repeatedly examined and tested, there was no water in the trench, neither the excavator nor compactor plate was operating near the trench at the time of the cave-in, and the trench was less than five feet deep. There was also specific testimony here that there was no vibration that could be felt inside the trench. Importantly, the court in *Hickerson* noted that the commission could draw reasonable inferences and rely upon common sense in evaluating the evidence. Likewise, in the present case, the commission could reasonably infer that any machinery operating at the worksite did not subject the trench to vibrations, given the circumstances explained above. For these reasons, the magistrate finds the commission did not abuse its discretion with regard to Ohio Adm.Code 4123:3-13(C)(2).

{¶ 74} Claimant's second argument pertains to Ohio Adm.Code 4123:3-13(E)(1), which requires that the walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means. Claimant asserts that the large excavator and dump trucks had already driven over the section of roadway that collapsed as the whole operation progressed northerly. Claimant also points out that the entire trench was dug into soil that had recently been disturbed as heavy machinery drove over regions of the already-cut asphalt. Moreover, claimant argues that successive 19-ton loads of fresh fill had to be

transported from the dump trucks that approached from the north end to the south end of the trench. Claimant points out that Swihart attested that dump trucks would sometimes back up and fill in already-excavated sections of the trench, and hefty piles of fill were placed as close as two feet away from the ledge.

{¶ 75} With regard to Ohio Adm.Code 4123:3-13(E)(1), the SHO found that the ground was hard clay without any evidence of compromise from water or any other hazards; machinery and traffic were not being utilized directly beside the trench; and there was insufficient evidence to establish the use of a dump truck would constitute moving ground.

{¶ 76} After reviewing the evidence in the record and the SHO's findings, the magistrate can find no abuse of the discretion with regard to Ohio Adm.Code 4123:3-13(E)(1). The SHO's findings were supported with testimony and evidence, much of it addressed above already with regard to Ohio Adm.Code 4123:3-13(C)(2). Although Crowner testified that at some point trucks probably drove by the trench the previous day, Swihart testified that the dump trucks would not have yet driven over the section that collapsed. Crowner also testified that machinery and equipment are kept to a minimum along the side of the trench, and there was not anything beside the trench in this case. Crowner stated that the trench consisted of hard clay. Furthermore, Schwag testified that the employer has never had a cave-in incident before, to his knowledge. In addition, Swihart said that he had been in the trench shortly before the accident occurred, and he did not see any cracking, water, undermining, or anything hazardous that would have indicated claimant was exposed to danger from moving ground. As mentioned above, the BWC's examination of the site prior to the accident also revealed no need for shoring or sloping. For these reasons, the magistrate finds the commission did not abuse its discretion with regard to Ohio Adm.Code 4123:3-13(E)(1).

{¶ 77} Claimant's third argument pertains to Ohio Adm.Code 4123:3-13(E)(7), which requires the side of the excavation to be sheet-piled, shored, braced, or sloped as necessary to resist the extra pressure due to the superimposed loads of power shovels, derricks, trucks, materials, or other heavy objects placed or operated on a level above and near an excavation. Claimant argues that this section applies to the large excavator, and the Supreme Court of Ohio has found that a backhoe being operated at ground level in the

immediate vicinity of an excavation is sufficient to trigger the application of Ohio Adm.Code 4123:3-13(E)(7), citing *State ex rel. Winzeler Excavating Co. v. Indus. Comm.*, 63 Ohio St.3d 290, 294 (1992). Claimant claims the SHO's finding that the large excavator did not qualify as a truck or power shovel because it did not have wenches or ropes is not determinative of whether subsection (E)(7) applies. Claimant urges that the large excavator was exceedingly heavy, and it cannot be disputed that the machine was either driving over cut asphalt or parked immediately to the north of the trench while working or idling. Claimant further asserts that, even if the SHO could find that the excavator was not "heavy," many dump trucks had been positioned directly nearby the trench throughout the day, as supported by the testimony that the dump trucks would approach and fill sections of the trench. Claimant insists that the SHO's reliance upon Swihart's testimony that the dump trucks would not have driven over the section of the road that collapsed is misplaced, given dump trucks would have nonetheless parked and idled near the trench all day as they waited to be filled by the large excavator.

{¶ 78} With regard to Ohio Adm.Code 4123:3-13(E)(7), the SHO found that the only pieces of equipment being used at the worksite were an excavator and two mini-excavators; the excavator in use was not a power shovel because the digging arm was not controlled and powered by wenches and steel ropes; the only applicable equipment in this subsection are the dump truck and mini-excavators; Swihart testified that the dump truck and mini-excavators were not near the edge of the trench; and the BWC observed the set up being used and found no need for bracing, shoring, or sloping for any extra pressure due to superimposed loads.

{¶ 79} Again, the magistrate can find no abuse of discretion. The commission's order was supported by evidence from the record. The magistrate agrees that whether the excavator was a "power shovel" is not determinative of whether there was a violation of Ohio Adm.Code 4123:3-13(E)(7) here, as a violation can also occur when trucks, materials, or other heavy objects are placed or operated on a level above and near an excavation without adequate shoring. However, to find that the "heavy" excavator that was digging the trench here automatically triggered the applicability of Ohio Adm.Code 4123:3-13(E)(7) would essentially make subsection (E)(7) applicable to all trenching operations, given excavators, backhoes, and track hoes are necessarily "near" the excavation they are digging.

There is no authority for such an expansive reading of subsection (E)(7). Moreover, Crowner testified that the excavator was not straddling the sides of the excavation; rather, it was positioned on the solid, paved ground ahead of the trench that awaited excavation. As for any dump trucks that were idling or being used to haul dirt to and from the excavated trench, Crowner testified that machinery and equipment are kept to a minimum along the side of the trench, and once the excavation is occurring, there is not any machinery or equipment beside the trench. Swihart also testified that the dump truck would not have driven over the section of the road that caved in. Claimant testified that the dump trucks park maybe five feet away from the excavation to get filled. Schwag also testified that the BWC safety consultant visited the site about one month before the incident and found no issues with the excavation procedure being utilized. Together, this testimony could have been relied upon by the SHO to conclude that there was not any extra pressure due to superimposed loads on a level above and near an excavation that required bracing or shoring. Furthermore, although the court in *Winzeler* found that a backhoe at ground level in the "immediate vicinity" of the excavation could constitute some evidence to support a violation of Ohio Adm.Code 4123:3-13(E)(7), and claimant understandably cites it as supportive of his position, *Winzeler* reveals very little about the facts of the case and the exact positioning of the backhoe, i.e., what "immediate vicinity" means. Although the magistrate does not deny that such a circumstance may provide some evidence to support a violation of Ohio Adm.Code 4123:3-13(E)(7) in a case, it is not necessarily true that a backhoe in the immediate vicinity is automatically a violation of Ohio Adm.Code 4123:3-13(E)(7). The commission has the discretion to make this determination in every case, and the magistrate can find no abuse of discretion given the testimony and evidence that exists in the record. For these reasons, the magistrate finds the commission did not abuse its discretion with regard to Ohio Adm.Code 4123:3-13(E)(7).

{¶ 80} Accordingly, it is the magistrate's decision that this court should deny the claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.