[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Levitin v. Indus. Comm.,* Slip Opinion No. 2023-Ohio-3559.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3559

THE STATE EX REL. LEVITIN, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Levitin v. Indus. Comm.,* Slip Opinion No. 2023-Ohio-3559.]

*Workers' compensation—Violation of specific safety requirements—Ohio Adm.Code 4123:1-5-11(D)(10)(a) —Industrial Commission did not abuse its discretion in denying additional award—Record contained some evidence supporting commission's findings that modified nip-point guard provided reasonable protection to employees and that employer had no forewarning of increased risk of injury or malfunction due to prior failure of modified nip-point guard—Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 2022-1187—Submitted June 27, 2023—Decided October 4, 2023.)

APPEAL from the Court of Appeals for Franklin County, No. 20AP-495, 2022-Ohio-2750.

_____

**Per Curiam.**

{¶ 1} This case is a direct appeal from an original action in mandamus filed in the Tenth District Court of Appeals. Appellant, Rimma Levitin, suffered a serious hand injury while operating one of appellee Menasha Corporation's die-cutter machines. Levitin requested an award in addition to her workers' compensation benefits, arguing that her injury was a result of Menasha's violation of specific safety requirements ("VSSR"). Appellee Industrial Commission of Ohio found that Menasha did not commit a VSSR and denied Levitin's request for an additional award.

{¶ 2} Levitin asked the Tenth District for a writ of mandamus to compel the commission to vacate its decision and to issue a new order granting her an additional award. The Tenth District concluded that the commission did not abuse its discretion and denied the writ. Levitin appealed to this court and filed a motion for oral argument. Because some evidence in the record supports the commission's decision, we affirm the Tenth District's judgment. We also deny Levitin's motion for oral argument.

## I. BACKGROUND

{¶ 3} Levitin was employed by Menasha for over 20 years. Orbis Corporation, a wholly owned subsidiary of Menasha, operated the facility at which Levitin worked. For the ten years immediately preceding her injury, Levitin operated one of three nearly identical Pioneer die-cutter machines. To operate the machine, Levitin placed pieces of corrugated plastic onto the die. The die was then pulled by conveyor belts between two rollers, the rollers compressed the plastic, and the die cut the plastic.

{¶ 4} Where the two rollers meet on each machine is a "nip point," which is defined in Ohio Adm.Code 4123:1-5-01(B)(94) as "the point or points at which it is possible to be caught between the moving parts of a machine, or between the moving and stationary parts of a machine, or between the material and the moving

2

part or parts of a machine." For each machine, the only access to the rollers is the opening where the die enters and exits. The original manufacturer of the machines installed protective flip-guards at the top of this opening, which were attached to each machine by a long piano hinge resting on a small switch. For each machine, the guards were designed to immediately shut off power to the machine if triggered by contact.

{¶ 5} In August 2016, Menasha decided to replace the guards on each machine because the guards were bowed. Menasha could not consult the manufacturer of the machines because the manufacturer was no longer in business. Menasha contracted another company to duplicate the original manufacturer's specifications for each guard and requested a modification of adding a one-inch-square steel tube across the entire length of each guard. With each steel tube weighing approximately 14 pounds, the modification increased the approximate weight of each guard from 25 pounds to 39 pounds.

{¶ 6} Approximately ten months later, in June 2017, Levitin's gloved right hand was caught and crushed in the nip point of the rollers on one of the machines. The modified guard did not trigger an automatic shutdown of the machine. Levitin's workers' compensation claim was allowed for several conditions related to the injuries to her right hand and fingers.

{¶ 7} Levitin applied to the commission for an additional award, alleging that Menasha had committed multiple safety-requirement violations. She narrowed her claim to alleged violations of Ohio Adm.Code 4123:1-5-11(D)(10)(a), which provides, "Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface," and of Ohio Adm.Code 4123:1-5-05(H), which provides, "Power-driven feed rolls, when exposed to contact, shall be guarded so as to prevent the hands of the operator from coming into contact with in-running rolls at any point." The evidence before the commission included

investigatory findings, conflicting expert reports, hearing testimony, and numerous depositions from Levitin, other machine operators, maintenance employees, supervisors, and managers.

{¶ 8} Orbis, the facility operator, conducted an internal investigation. On its incident investigation form, "no machine guarding" and "safety rule infraction" were both selected as a "root cause / contributing factor" of the accident. The report further explained that "[t]he guards in place on the [machines] allow for roughly a [five-]inch gap where a hand could slip into the roll. The guards must be extended to make the gap small enough where a hand cannot fit into it."

{¶ 9} The Occupational Safety and Health Administration ("OSHA") also investigated the accident and issued a citation. OSHA initially found that "the employer failed to ensure that effective machine guarding was in place on the [machine] to prevent employees from reaching the point of operation hazard" and that the "guard was ineffective in that [a one-]inch metal bar stock was added [to] the length of the guard making it too heavy to be lifted in the event an employee hit it." OSHA later modified its finding, as reflected in an informal settlement agreement with Orbis, concluding that the " 'guarding in place on the [machine] was not sufficient to prevent employees from reaching the point of operation hazard, in that, the factory installed guard on the [machine] did not operate efficiently and effectively for that piece of equipment.' "

{¶ 10} Some Menasha employees testified in depositions that the modified guard was not tested during normal operations and that it was too heavy for accidental contact to trigger a shutdown of the machine. Other employees testified that the guard continued to work as it had before the modification and that it was tested regularly by verifying that it could be lifted. The testimony disclosed that some, but not all, employees were able to lift the modified guard with one hand.

{¶ 11} Levitin and another machine operator testified that they had informed management that the modified guard was too heavy to lift. The other

machine operator also testified that she told management that the guard was too heavy to function as designed. Several managers testified, however, that they were never informed of these concerns and were not aware of any prior accidents with the machine. Levitin also testified that prior to the accident, she had never had an incident where a part of her body triggered a shutdown on the machine, and she was not aware of anyone else who had either. Additionally, it is undisputed that the maintenance logs for each machine did not document any prior failure or malfunction of the modified guards after their installation.

{¶ 12} A staff hearing officer ("SHO") for the commission found that the modified guard provided reasonable protection from the nip point because, although it was heavier and less effective than the original guard, it "was not equivalent to no guard at all." The SHO further found that because there was no evidence that the modified guard had previously failed, Menasha could not be held liable for the first-time failure of the safety device. The SHO also found that the regulation pertaining to power-driven feed rolls, Ohio Adm.Code 4123:1-5-05(H), did not apply to this case. Accordingly, the SHO found no VSSR and denied Levitin's application for an additional award. Levitin's request for a rehearing was denied.

{¶ 13} Levitin filed a complaint in the Tenth District Court of Appeals, arguing that the commission had abused its discretion in denying her application for an additional award. She requested a writ of mandamus to compel the commission to vacate the SHO's order and to issue a new order granting her an additional award for a VSSR. Levitin limited her argument to an alleged violation of the nip-point regulation, Ohio Adm.Code 4123:1-5-11(D)(10)(a). The Tenth District concluded that there was some evidence supporting the commission's decision and denied the writ. 2022-Ohio-2750, ¶ 4-5.

{¶ 14} Levitin appealed as of right.

## II. LEGAL STANDARDS

{¶ 15} In a direct appeal of a mandamus action originating in a court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967). Levitin is entitled to a writ of mandamus if she shows by clear and convincing evidence that she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide it, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. A writ of mandamus will lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997).

{¶ 16} "No employer shall violate a specific safety rule adopted by the administrator of workers' compensation pursuant to section 4121.13 of the Revised Code or an act of the general assembly to protect the lives, health, and safety of employees pursuant to Section 35 of Article II, Ohio Constitution." R.C. 4121.47(A); *see also State ex rel. Penwell v. Indus. Comm.*, 142 Ohio St.3d 114, 2015-Ohio-976, 28 N.E.3d 101, ¶ 20 ("A VSSR award is given only when an employer's acts contravene express, specific, and definite statutory or regulatory provisions"). To prevail on a VSSR claim, the claimant must establish that an applicable specific safety requirement was in effect at the time of the injury, that the employer failed to comply with the requirement, and that the failure to comply proximately resulted in the injury. *State ex rel. Sunesis Constr. Co. v. Indus.*

*Comm.*, 152 Ohio St.3d 297, 2018-Ohio-3, 95 N.E.3d 377, ¶ 23. "These issues are questions of fact within the final jurisdiction of the commission, which is solely responsible for evaluating the weight and credibility of the evidence before it." (Citations omitted.) *State ex rel. Jeep Corp. v. Indus. Comm.*, 42 Ohio St.3d 83, 85, 537 N.E.2d 215 (1989).

{¶ 17} Ohio Adm.Code 4123:1-5-01(A) describes the purpose of specific safety requirements as providing *reasonable*, not absolute, safety for employees. "Decisions of this court have acknowledged the practical impossibility of guaranteeing that a device will protect against all contingencies or will never fail." *Jeep* at 84. Thus, "[t]he fact that a safety device that otherwise complies with the safety regulations failed on a single occasion is not alone sufficient to find that the safety regulation was violated." *State ex rel. M.T.D. Prods., Inc. v. Stebbins*, 43 Ohio St.2d 114, 118, 330 N.E.2d 904 (1975). When the employer raises this "first-time failure" argument (also referred to as the "one-time malfunction" defense or exception), the question before the commission is " 'whether [the employer] had ever been forewarned of the malfunction on the date of injury by a prior malfunction of the safety device.' " (Brackets added in *Penwell*.) *Penwell* at ¶ 22, quoting *State ex rel. Precision Thermo-Components, Inc. v. Indus. Comm.*, 10th Dist. Franklin No. 09AP-965, 2011-Ohio-1333, ¶ 29.

### III. ANALYSIS

#### A. Motion for Oral Argument

{¶ 18} A request for oral argument in a direct appeal is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *State ex rel. Davis. v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

{¶ 19} Levitin contends that this case involves a novel, important, and complex application of the "some evidence" rule in the context of a fact question relating to a corporate-employer's knowledge of a risk of injury. However, the "some evidence" standard has long been used to review mandamus actions that challenge commission decisions, *see, e.g.*, *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20-21, 508 N.E.2d 936 (1987), and the parties have sufficiently argued application of the standard in their merit briefs to resolve this case, *see State ex rel. Mignella v. Indus. Comm.*, 156 Ohio St.3d 251, 2019-Ohio-463, 125 N.E.3d 844, ¶ 22. Accordingly, we conclude that Levitin has not demonstrated that oral argument is necessary, and we therefore deny the motion.

## B. VSSR Claim

{¶ 20} Here, the applicable specific safety requirement is found in Ohio Adm.Code 4123:1-5-11(D)(10)(a), which provides: "Means shall be provided to protect employees exposed to contact with nip points created by power driven in-running rolls, rollover platen, or other flat surface material being wound over roll surface."

{¶ 21} Levitin argues that because Menasha intentionally modified the guard so as not to trigger a shutdown on accidental contact with a body part, the modified guard did not provide reasonable safety from accidental injury and Menasha cannot claim a lack of forewarning of the increased risk of injury or malfunction.

{¶ 22} First, the premise of this argument is unfounded. Levitin asserts that Menasha intentionally committed a VSSR by purposely modifying the guard so that the only remaining use "was to feign compliance with the nip-point guarding rule." However, the commission did not find that Menasha intentionally modified the guard to disable the safety feature, but instead found that Menasha modified the guard to prevent the guard from bowing and "accidentally actuating" a shutdown.

This is supported by deposition testimony that Menasha had determined that each of the guards were bowed, which was causing shutdowns to be triggered too easily.

{¶ 23} Moreover, there is some evidence to support the commission's determination that Menasha did provide "means"—albeit less effective means— "to protect employees exposed to contact with nip points" under Ohio Adm.Code 4123:1-5-11(D)(10)(a). *See also Black's Law Dictionary* 1174 (11th Ed.2019) (defining "means" as "[s]omething that helps to attain an end; an instrument; a cause"). Relying on deposition testimony and other evidence and noting OSHA's revised conclusion that the "guarding in place on the [machine] was not sufficient to prevent employees from reaching the point of operation hazard, in that [it] did not operate efficiently and effectively for that purpose," the commission found that "the heavier [modified] guard was less effective than the previous guard, but that the heavier guard was not equivalent to no guard at all." Levitin counters that Menasha's own investigation concluded that a "root cause" of the accident was "no machine guarding." However, whether the modified guard provided reasonable safety from accidental injury is a factual determination, and "[f]actual questions relevant to proof of a VSSR rest exclusively within the discretion of the commission," *State ex rel. Scott v. Indus. Comm.*, 136 Ohio St.3d 92, 2013-Ohio-2445, 990 N.E.2d 598, ¶ 12.

{¶ 24} The same is true of the commission's finding that Menasha had no forewarning of an increased risk of injury or malfunction due to the modification of the guard. This finding is supported by testimony from multiple employees that this type of failure had never occurred and that no one had complained about the increased weight of the modified guards, either orally or in writing. Additionally, the maintenance logs for each of the machines do not exhibit a prior history of malfunctions or problems with the modified guards such that Menasha should have been aware that this type of accident would occur. *See Penwell*, 142 Ohio St.3d 114, 2015-Ohio-976, 28 N.E.3d 101, at ¶ 22. Although Levitin points to conflicting

testimony on the issue of notice, the presence of contrary evidence is immaterial; we do not reweigh the evidence, *State ex rel. World Stamping & Mfg. Co. v. Indus. Comm.*, 84 Ohio St.3d 433, 435, 704 N.E.2d 1230 (1999).

{¶ 25} Finally, Levitin argues that in cases like this one, where a corporate party denies knowledge of a fact, a court should determine whether any evidence demonstrates knowledge of that fact by *any* employee of the corporation. In other words, she contends that "application of the some-evidence rule should essentially be inverted."

{¶ 26} Appellees insist that Levitin did not raise this argument below and cannot raise it for the first time here. *See State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997). Levitin responds that the argument is implicit within those she raised below regarding notice and foreseeability and, therefore, has not been forfeited. She relies on this court's declaration that "[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993), *modified in part on other grounds*, *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus.

{¶ 27} Regardless of when the argument to invert the "some evidence" rule was first raised by Levitin, we reject the argument as a veiled attempt to compel this court to reweigh the evidence and second-guess the commission's credibility assessments. We are limited to a determination of whether there is some evidence in the record to support the commission's decision, *Sunesis*, 152 Ohio St.3d 297, 2018-Ohio-3, 95 N.E.3d 377, at ¶ 22, and have repeatedly expressed our commitment to the "some evidence" rule and a refusal to reweigh the evidence, *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172, 545 N.E.2d 1216 (1989). Additionally, Levitin's contention that "if a company may deny knowledge

of a risk of injury simply by pointing to specific uninformed employees, no corporation will ever be held accountable for knowing or intentional violations of specific safety regulations" is simply unsound. Noting that Levitin admitted that she had not complained to her immediate supervisor about the safety of the modified guard and that no complaints about the modified guard were made to management in writing, the commission may have found more credible the testimony from supervisors and management employees that the corporate employer did not have notice of the increased risk of injury or malfunction. But the commission's credibility determinations have not always and will not always favor the employer. *See, e.g.*, *Precision Thermo-Components*, 2011-Ohio-1333, at ¶ 6 ("[A supervisor's] statement and [the claimant's] affidavit are 'some evidence' supporting the commission's decision that [the corporate employer] had prior knowledge of the press' malfunctioning safety device, as the statement and affidavit 'present indicia of credibility' ").

## IV. CONCLUSION

{¶ 28} Article II, Section 35 of the Ohio Constitution allows for an award of additional compensation to a worker who sustains injuries as a result of a "failure of the employer to comply with any specific requirement," i.e., a VSSR. The additional award "is in the nature of a penalty, and it was the purpose of the Constitution to impose such penalty upon the employer who failed to comply, and not upon him who did comply." *State ex rel. Whitman v. Indus. Comm.*, 131 Ohio St. 375, 379, 3 N.E.2d 52 (1936). However, the law neither requires foolproof safety features, *Jeep*, 42 Ohio St.3d at 84, 537 N.E.2d 215, nor penalizes unforeseeable first-time failures of safety devices, *M.T.D. Prods.*, 43 Ohio St.2d at 118, 330 N.E.2d 904.

{¶ 29} Here, the commission determined that the modified guard provided reasonable protection to employees and that the employer had no forewarning of an increased risk of injury or malfunction due to a prior failure of the guard. These

determinations are supported by some evidence. We therefore conclude that the commission did not abuse its discretion in denying Levitin's request for an additional award for a VSSR and that Levitin is not entitled to a writ of mandamus. We deny Levitin's motion for oral argument and affirm the Tenth District Court of Appeals' judgment denying the writ.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Bentoff & Duber Co., L.P.A., Brandon Duber, and Glen S. Richardson; and Flowers & Grube, Louis E. Grube, Paul W. Flowers, and Melissa A. Ghrist, for appellant.

Dave Yost, Attorney General, and Cindy Albrecht, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Thomas & Company, L.P.A., Michael A. Moskowitz, and Scott W. McKinley, for appellee Menasha Corporation.

_____