[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Berry v. Indus. Comm.*, Slip Opinion No. 2025-Ohio-4720.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4720

THE STATE EX REL. BERRY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Berry v. Indus. Comm.*, Slip Opinion No. 2025-Ohio-4720.]**

*Workers' compensation—Mandamus—Violations of specific safety requirements ("VSSRs")—Adm.Code 4123:1-3-13(E)(7)—Judicial branch must defer to Industrial Commission's factual determinations but not to its legal interpretations of specific safety requirements—TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors and In re Application of Alamo Solar I, L.L.C., followed—Court of appeals correctly concluded that whether large excavator was a power shovel does not determine whether Adm.Code 4123:1-3-13(E)(7) was applicable but erred by (1) proceeding to evaluate the evidence and determine that employer violated Adm.Code 4123:1-3-13(E)(7) because large excavator was a "heavy object[] on a level above and near" trench where VSSR applicant*

*was working when he was injured and (2) holding that staff hearing officer abused her discretion by not finding a violation of Adm.Code 4123:1-3-13(E)(7) based on location of dump truck and fill dirt—Court of appeals' judgment granting writ ordering commission to issue VSSR award reversed and limited writ ordering commission to resolve certain factual issues it did not reach when denying VSSR application granted.*

(No. 2024-1208—Submitted May 13, 2025—Decided October 16, 2025.)

APPEAL from the Court of Appeals for Franklin County,

No. 21AP-548, 2024-Ohio-2616.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellee, Curtis A. Berry, was injured while working in a trench for appellant Underground Utilities, Inc. After he began receiving workers' compensation benefits for the injury, Berry applied for an additional award, alleging that his injury resulted from Underground Utilities' violations of specific safety requirements. Under Article II, Section 35 of the Ohio Constitution and Ohio's workers' compensation system, an employee may be entitled to such an additional award when the employee's workplace injury resulted from an employer's violation of a specific safety requirement ("VSSR").

{¶ 2} Appellant Industrial Commission of Ohio denied Berry's application, finding that Underground Utilities did not violate any specific safety requirement. Berry filed a complaint for a writ of mandamus in the Tenth District Court of Appeals, which granted the writ and ordered the commission to issue a VSSR award to Berry. Underground Utilities and the commission each appealed. Underground Utilities has also filed a motion for oral argument.

{¶ 3} Although we uphold the Tenth District's determination that the judicial branch is not required to defer to the commission's legal interpretations of specific safety requirements, we reverse the Tenth District's judgment granting a writ of mandamus and we issue a limited writ ordering the commission to resolve certain factual issues that it did not reach when it denied Berry's VSSR application. The motion for oral argument is denied.

## I.  BACKGROUND

### A.  Berry's Injury and VSSR Claim

{¶ 4} In July 2017, Berry sustained a work-related injury while employed by Underground Utilities, a utility-connection company that was installing a new water line under a road in the Columbus area.

{¶ 5} To install the water line, an Underground Utilities crew would identify an area to be excavated by cutting two parallel lines in the asphalt.  A large excavator would straddle the lines and, moving in a northerly direction, dig a trench between the lines behind the excavator.  With a scooping bucket, the operator of the excavator would lift the road material and underlying soil into the bed of a dump truck, which was parked directly to the west of the excavator.  One of Berry's responsibilities was to climb into trenches after they were dug and locate any potential gas lines.

{¶ 6} While Berry and his colleagues were completing their work at the northern end of a trench, a different crew would lay the new water pipe and backfill the southern part of the trench.  When backfilling, the crew used a mini-excavator to compact fresh soil into the trench.  A second mini-excavator was also on site to assist the crew.

{¶ 7} While Berry was in a trench—which was approximately three and a half feet deep and two feet wide—behind the large excavator, a section of asphalt detached from the western edge of the trench and struck him on his right side in the

hip, leg, and buttocks.  The side walls of the trench were not supported by any type of shoring or bracing system.

{¶ 8} Berry's workers' compensation claim was approved for

fracture of superior rim of right pubis for closed fracture; contusion of right thigh; contusion of lower back and pelvis; nondisplaced fracture of anterior wall of right acetabulum; contusion of right hip; protrusion with effacement thecal sac L5-S1; protrusion with effacement thecal sac L4-L5; thigh hematoma, right; hip hematoma, right; substantial aggravation of pre-existing spinal stenosis lumbar region L3-L5; substantial aggravation of pre-existing spinal stenosis lumbosacral region L5-S1; intervertebral disc displacement at L3-L4.

{¶ 9} In April 2019, Berry applied for a VSSR award, alleging that Underground Utilities violated three safety regulations, although only Adm.Code 4123:1-3-13(E)(7) is relevant to this appeal.  The version of that rule in effect on the date of Berry's injury provided:

If it is necessary to place or operate power shovels, derricks, trucks, materials, or other heavy objects on a level above and near an excavation, the side of the excavation shall be sheet-piled, shored, braced or sloped as necessary to resist the extra pressure due to such superimposed loads.[1]

---

1. Former Adm.Code 4123:1-3-13(B) defined "excavation," "trench," "sides," "sheet pile," and "braces."

Former Adm.Code 4123:1-3-13(E)(7), 2010-2011 Ohio Monthly Record 2-2309, 2-2311 (effective Jan. 1, 2011).

**B. The Commission Denies Berry's Application for a VSSR Award**

{¶ 10} A staff hearing officer ("SHO") presided over a hearing for the commission, during which Berry and several witnesses for Underground Utilities testified. In May 2021, the SHO denied Berry's request for a VSSR award, finding with respect to each of the three safety rules at issue either that the rule was inapplicable or that Underground Utilities had not violated it.

{¶ 11} In determining whether Adm.Code 4123:1-3-13(E)(7) applied, the SHO examined the types of machinery at the job site and their proximity to the trench where Berry was injured. The SHO found that (1) because the large excavator did not meet a Wikipedia definition of "power shovel," it did not trigger application of the rule's requirement that "the side of the excavation be sheet-piled, shored, braced or sloped" and (2) the dump truck and the mini excavators were the only pieces of equipment that could have triggered the requirement. The SHO then found that neither the dump truck nor the mini-excavators were "near the edge of the trench" so as to trigger the rule's requirement.

{¶ 12} Berry moved for a rehearing, but the motion was denied.

**C. The Tenth District Orders the Commission to Issue a VSSR Award**

{¶ 13} Berry filed a complaint in the Tenth District for a writ of mandamus directing the commission to vacate the orders denying his requests for a VSSR award and a rehearing and to grant his VSSR application. Berry continued to argue that Underground Utilities had violated the same three specific safety rules. Relating to Adm.Code 4123:1-3-13(E)(7), Berry asserted that the SHO had made a clear mistake of law by determining that the large excavator did not trigger application of the rule's requirement that "the side of the excavation be sheet-piled, shored, braced or sloped" merely because the excavator was not a "power shovel." Berry further claimed that the large excavator, the other machinery at the job site,

and piles of fill dirt were all "heavy objects on a level above and near an excavation," thereby triggering the rule's requirement.

**{¶ 14}** The Tenth District referred the matter to a magistrate, who recommended that the court of appeals deny the writ. 2024-Ohio-2616, ¶ 80 (10th Dist.). Regarding Adm.Code 4123:1-3-13(E)(7), the magistrate agreed with Berry's argument that whether the large excavator is a "power shovel" is not determinative, because the rule also applies when "'trucks, materials, or other heavy objects'" are placed or operated on a level above and near an excavation. *Id.* at ¶ 79, quoting the rule. However, the magistrate concluded that the SHO had not abused her discretion in finding that Underground Utilities had not violated the rule, because her order was supported by some evidence in the record. *Id.*

**{¶ 15}** Berry objected to the magistrate's decision. The Tenth District requested supplemental briefing regarding whether its historical standard of review for interpretating specific safety requirements had been modified by this court's decisions in *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, and *In re Application of Alamo Solar I, L.L.C.*, 2023-Ohio-3778, which concern judicial deference to administrative agencies' legal interpretations.

**{¶ 16}** After completion of supplemental briefing, all three judges on the appellate panel agreed that in light of *Alamo Solar*, the court of appeals would no longer defer to the commission's interpretations of specific safety regulations. 2024-Ohio-2616 at ¶ 23-24 (10th Dist.); *id.* at ¶ 45 (Dorrian, J., concurring in part and dissenting in part). All three judges also agreed with the magistrate's finding that Adm.Code 4123:1-3-13(E)(7) may apply even if the large excavator is not a "power shovel," *id.* at ¶ 32; *id.* at ¶ 46 (Dorrian, J., concurring in part and dissenting in part), and they overruled Berry's objections regarding the other two alleged rule violations, *see id.* at ¶ 38; *id.* at ¶ 52-53 (Dorrian, J., concurring in part and dissenting in part).

{¶ 17} But ultimately, only two of the three judges voted to order the commission to issue Berry a VSSR award. The majority found that because both the large excavator and the dump truck were "heavy objects on a level above and near" the trench where Berry was working, Underground Utilities violated Adm.Code 4123:1-3-13(E)(7) by failing to comply with its requirement that sheet-piling, shoring, bracing, or sloping be employed to resist the extra pressure created by that machinery. *Id.* at ¶ 27-33. The majority also concluded that "fill dirt" created extra pressure that triggered application of the rule's requirement, although the majority did not separately analyze whether the fill dirt was a "heavy object" or piled "near" the trench. *Id.* at ¶ 28, 33. Because the majority concluded that the SHO had abused her discretion by finding no violation of Adm.Code 4123:1-3-13(E)(7), it ordered the commission to vacate the SHO's decision denying Berry's VSSR application and issue him a VSSR award. *Id*. at ¶ 33, 38.

{¶ 18} The dissenting judge would have issued a limited writ for the purpose of remanding the matter to the commission to determine, "in the first instance, whether the large excavator constituted a 'heavy object' placed or operated 'on a level above and near' the excavation for purposes of Ohio Adm.Code 4123:1-3-13(E)(7)." *Id.* at ¶ 50 (Dorrian, J., concurring and dissenting), quoting the rule.

{¶ 19} Underground Utilities and the commission each timely appealed to this court.

## II. STANDARD OF REVIEW

### A. Mandamus Standard

{¶ 20} To be entitled to a writ of mandamus, a relator must show by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that the relator has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. In a direct appeal of the

judgment in a mandamus action that originated in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967).

{¶ 21} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. An order denying an application for a VSSR award is not appealable under R.C. 4123.512(A) and therefore may be challenged in a mandamus action. *See State ex rel. B & C Machine Co. v. Indus. Comm.*, 1992-Ohio-75, ¶ 10.

**B. VSSR Standard**

{¶ 22} Article II, Section 35 of the Ohio Constitution allows for an award of additional compensation to a worker who has sustained injuries as a result of a "failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the general assembly or in the form of an order adopted by [the] board."[2] *See also* R.C. 4121.47(A) (prohibiting an employer from violating a "specific safety rule adopted by the administrator of workers' compensation . . . or an act of the general assembly to protect the lives, health, and safety of employees"). "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation

---

2. The "board" referred to in Article II, Section 35 is the State Liability Board of Awards, which was superseded in 1913 when the General Assembly created the Industrial Commission. *See State ex rel. Engle v. Indus. Comm.*, 142 Ohio St. 425, 429 (1944), citing Am.S.B. No. 137, 103 Ohio Laws 95.

benefits" and "is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 1997-Ohio-62, ¶ 7.

{¶ 23} To prevail on a VSSR claim, the claimant must establish (1) that an applicable specific safety requirement was in effect at the time of the injury, (2) that the employer violated the requirement, and (3) that the employer's violation proximately caused the injury. *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 12. Because a VSSR award is in the nature of a penalty, the safety requirement must be "specific enough to plainly apprise an employer of its legal obligations towards its employees." (Cleaned up.) *Id.* at ¶ 11.

### III. ANALYSIS

{¶ 24} On appeal, Underground Utilities alone argues that the Tenth District erred by not deferring to the SHO's legal interpretation of the specific safety requirement at issue. Both Underground Utilities and the commission argue that because some evidence supported the SHO's decision, Berry is not entitled to a writ of mandamus. We address these arguments below.

### A. Deference to the Commission's Legal Interpretation of Specific Safety Requirements

{¶ 25} Underground Utilities asserts that the Tenth District should have deferred to the SHO's legal interpretation of the specific safety rule at issue here and that the court's reliance on *TWISM* and *Alamo Solar* was misguided because the reasoning used in those cases does not apply to the commission or its hearing officers. We disagree.

{¶ 26} In *TWISM*, we clarified that the judicial branch is never required to defer to an agency's interpretation of a statute it is tasked with implementing and that "an administrative interpretation should never be used to alter the meaning of clear text." 2022-Ohio-4677 at ¶ 3, 44. In *Alamo Solar*, we further clarified that

courts are not required to give due deference to an agency's interpretations of its own regulations. 2023-Ohio-3778 at ¶ 13-14.

{¶ 27} Underground Utilities argues that *TWISM* and *Alamo Solar* do not apply to the commission because Article II, Section 35 of the Ohio Constitution vests the commission with the final authority to adjudicate VSSR applications, thereby requiring deference to commission VSSR decisions absent fraud, corruption, or clear disregard of the law. Underground Utilities further asserts that unlike other administrative agencies, the commission neither drafts nor enforces the regulations it interprets. Rather, the administrator of the Bureau of Workers' Compensation ("BWC") adopts specific safety requirements.

{¶ 28} Article II, Section 35 of the Ohio Constitution provides:

> Laws may be passed establishing a board which . . . shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the general assembly or in the form of an order adopted by [the State Liability Board of Awards], and its decision shall be final . . . .

This provision "vests exclusive and final jurisdiction in the commission, with respect to specific-safety-requirement violations, subject to correction in mandamus upon a showing of an abuse of discretion." *B & C Machine Co.*, 1992-Ohio-75, at ¶ 10.

{¶ 29} However, almost a century ago, we explained that this finality extends only to the determination whether, in fact, the injury was caused by the employer's violation of a specific safety requirement. *Slatmeyer v. Indus. Comm.*,

115 Ohio St. 654, 656 (1926). "[N]o legal questions were committed by the Constitution to the final jurisdiction of the commission." *Id.* at 657.

{¶ 30} Nevertheless, as Underground Utilities points out in its merit brief, this court has indicated in certain decisions that the interpretation of a specific safety requirement is within the commission's "discretion" or "final jurisdiction." *E.g.*, *State ex rel. Arce v. Indus. Comm.*, 2005-Ohio-572, ¶ 19 ("discretion"); *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193, 194 (1983) ("final jurisdiction"). This court has also stated that we are "'normally obligated to defer to the commission's interpretation of its own rules.'" *State ex rel. Byington Builders, Ltd. v. Indus. Comm.*, 2018-Ohio-5086, ¶ 26, quoting *State ex rel. Lamp. J.A. Croson Co.*, 1996-Ohio-319, ¶ 14.

{¶ 31} Today, in light of *TWISM* and *Alamo Solar*, we clarify that for purposes of Article II, Section 35 of the Ohio Constitution, the commission's factual determinations are final but its legal interpretations of specific safety requirements are not. The Ohio Constitution does not require that courts defer to the commission's legal interpretations of safety laws or administrative rules. If the text of a safety statute or a rule promulgating a specific safety requirement is clear, courts should apply it as written, just as courts should do when interpreting other sections of the Revised Code or the Administrative Code. If the text is ambiguous, courts "may consider the [commission's] interpretation only for its persuasive power." *Alamo Solar*, 2023-Ohio-3778, at ¶ 14.

{¶ 32} Further, even if the administrator of the BWC, not the Industrial Commission, has the responsibility to draft specific safety requirements, courts need not abdicate their role of interpreting the law by deferring to the commission's legal interpretations. Interpreting text involving common words used in their ordinary sense is a task "routinely performed by courts" and "well within the judiciary's core competence," and even when the text involves "technical meaning

uniquely within the competency of the agency," "it remains the judiciary's role to independently interpret the law." *TWISM*, 2022-Ohio-4677, at ¶ 47.

{¶ 33} We therefore reject Underground Utilities' deference argument.

**B. Whether Some Evidence Supports the Commission's Decision**

{¶ 34} As noted above, the Tenth District majority concluded that the commission abused its discretion by not finding that Underground Utilities had violated Adm.Code 4123:1-3-13(E)(7) by failing to employ sheet-piling, shoring, bracing, or sloping to resist the extra pressure from the superimposed loads created by the large excavator, the dump truck, and fill dirt. 2024-Ohio-2616 at ¶ 33 (10th Dist.). On appeal, the commission and Underground Utilities assert that some evidence supported the SHO's decision and that the commission therefore did not abuse its discretion. The commission alternatively asserts that if we conclude that the SHO misinterpreted Adm.Code 4123:1-3-13(E)(7) relating to the large excavator, the appropriate remedy is a limited writ of mandamus allowing the commission to evaluate the facts on that issue in the first instance.

{¶ 35} For the reasons explained below, we issue a limited writ relating to the SHO's interpretation of Adm.Code 4123:1-3-13(E)(7) with respect to the large excavator and reverse the Tenth District's findings relating to the dump truck and fill dirt.

*1. The large excavator*

{¶ 36} In its merit brief, the commission does not expressly defend the SHO's finding that the large excavator did not trigger Adm.Code 4123:1-3-13(E)(7) because it is not a power shovel. Rather, the commission generally asserts that some evidence supported a finding that no heavy machinery was near the edge of the trench and that the rule therefore was not violated.

{¶ 37} The SHO, however, did not consider whether the large excavator was "near" the trench for purposes of Adm.Code 4123:1-3-13(E)(7). Rather, the SHO concluded that the large excavator was not a power shovel and that the dump

truck and the mini-excavators were the only pieces of equipment that could have triggered the rule's requirement. In other words, the SHO found that the rule was not triggered by the large excavator—the object that was closest to Berry and the trench—on the sole basis that the excavator is not a power shovel.

**{¶ 38}** We find that the SHO misinterpreted Adm.Code 4123:1-3-13(E)(7). The rule's requirement that "the side of the excavation be sheet-piled, shored, braced or sloped" is triggered when "power shovels, derricks, trucks, materials, *or other heavy objects*" are placed above and near an excavation. (Emphasis added.) Even if the large excavator is not a "power shovel," it could be characterized as "[an] other heavy object[]," which has an independent meaning. By listing "power shovels," the rule does not exclude all other types of excavation machinery or equipment that could trigger application of the rule without satisfying a definition of "power shovel." For example, we previously found that some evidence supported the commission's finding of a violation of Adm.Code 4123:1-3-13(E)(7) when a "backhoe was at ground level in the immediate vicinity of [an] excavation." *State ex rel. Winzeler Excavating Co. v. Indus. Comm.*, 63 Ohio St.3d 290, 294 (1992). The rule's applicability to the backhoe did not depend on whether the backhoe constituted a power shovel. Therefore, the Tenth District correctly concluded that whether the large excavator is a power shovel does not determine whether Adm.Code 4123:1-3-13(E)(7) applies.

**{¶ 39}** The Tenth District erred, however, by proceeding to evaluate the evidence and determine in the first instance that Underground Utilities violated Adm.Code 4123:1-3-13(E)(7) because the large excavator was a "heavy object[] on a level above and near" the trench, 2024-Ohio-2616 at ¶ 29-33 (10th Dist.). Whether the large excavator was "near" the trench and whether any potential violation of the rule proximately caused Berry's injury are questions of fact, which rest exclusively within the discretion of the commission. *See State ex rel. Camaco, L.L.C. v. Albu*, 2017-Ohio-7569, ¶ 29.

**{¶ 40}** We therefore grant a limited writ for the purpose of sending this matter back to the commission to determine (1) whether the large excavator triggered application of Adm.Code 4123:1-3-13(E)(7) (regardless of whether the large excavator was a power shovel) and if so, (2) whether Underground Utilities violated the rule and if so, (3) whether the violation proximately caused Berry's injuries. We have a "long-standing practice of granting a limited writ when a relator fails to demonstrate entitlement to the full relief sought in mandamus and evidentiary questions remain." *State ex rel. Heilman v. Indus. Comm.*, 2024-Ohio-5518, ¶ 45; *see also Camaco* at ¶ 29-30 (issuing a limited writ of mandamus ordering the commission to resolve a factual question relating to a VSSR claim that the hearing officer had not previously reached).

### 2. *The dump truck and fill dirt*

**{¶ 41}** The Tenth District majority also erred by holding that the SHO abused her discretion by not finding a violation of Adm.Code 4123:1-3-13(E)(7) based on the location of the dump truck and fill dirt.

**{¶ 42}** Some evidence—namely, testimony from the operator of the large excavator—supported the SHO's determination that the dump truck was not "near" the edge of the trench for purposes of Adm.Code 4123:1-3-13(E)(7). The Tenth District discounted the operator's testimony, finding that he had said only that "'the dump truck would not have touched [the piece of asphalt that fell on Berry],' not that it was not 'near' the trench." (Bracketed text in original.) 2024-Ohio-2616 at ¶ 30 (10th Dist.). The operator's full testimony, however, was that the dump truck did not touch *and* "wouldn't have gotten over to" the section of asphalt that fell onto Berry. Additionally, the project foreman testified that the dump truck had been parked beside the large excavator, that the crew had tried "to keep everything to a minimum on the si[d]e of the trenches," and that nothing was beside the trench when Berry was injured. And Berry acknowledged that the dump truck was "maybe five f[ee]t away, if that" from the trench when the asphalt fell on him.

{¶ 43} We have "repeatedly expressed our commitment to the 'some evidence' rule and a refusal to reweigh the evidence." *State ex rel. Levitin v. Indus. Comm.*, 2023-Ohio-3559, ¶ 27. "Questions regarding the weight and credibility of the evidence are within the discretion of the commission as the exclusive fact-finder." *State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 2015-Ohio-4525, ¶ 16. And the commission has "substantial leeway to draw inferences from the evidence before it." *State ex rel. McBee v. Indus. Comm.*, 2012-Ohio-2678, ¶ 10. Here, the SHO did not abuse her discretion by relying on the large-excavator operator's testimony to conclude that the dump truck was not "near" the trench. By reweighing the evidence and concluding that the dump truck was necessarily "near" the trench, the court of appeals stepped into the shoes of the fact-finder and substituted its opinion on a factual issue for the SHO's.

{¶ 44} As for the fill dirt, inexplicably, the Tenth District majority did not analyze whether fill dirt was "near" the trench or whether it constituted a "heavy object[]" for purposes of Adm.Code 4123:1-3-13(E)(7). Moreover, it is unclear what the Tenth District meant when it referred to "fill dirt." The majority opinion refers to a "pile of fill dirt" that was brought to the job site to be used to fill in the trench, 2024-Ohio-2616 at ¶ 28, then separately refers to "fill dirt" that was removed from the trench by the large excavator and deposited into the dump truck to be hauled away from the site, *id.* at ¶ 4, 31, 33. The majority did not clarify whether it was the pile of fresh fill dirt or the excavated dirt in the dump truck that triggered application of Adm.Code 4123:1-3-13(E)(7).

{¶ 45} If the Tenth District majority was referring to the pile of fresh fill dirt, the SHO made other factual findings indicating that the pile was not near the portion of the trench where Berry was injured. Specifically, the SHO noted that the area of the trench where Berry was injured was 20 feet away from the section being backfilled and was "not near the area of backfill." Regardless, given that the Tenth District did not separately analyze or cite evidence establishing for purposes of

Adm.Code 4123:1-3-13(E)(7) that "fill dirt" either was a "heavy object[]" or was located "near" the trench in which Berry was injured, the Tenth District had no basis for concluding in the first instance that Berry was entitled to a VSSR award—and that the commission had a clear legal duty to issue a VSSR award—based on the location of fill dirt.

## IV. MOTION FOR ORAL ARGUMENT

{¶ 46} In a direct appeal, granting a request for oral argument is subject to the court's discretion. Rule 17.02(A). In exercising that discretion, we consider "whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals." *State ex rel. Walters v. Indus. Comm.*, 2024-Ohio-552, ¶ 40.

{¶ 47} Underground Utilities has moved for oral argument, asserting that this case presents an issue of constitutional significance: whether Article II, Section 35 of the Ohio Constitution requires courts to defer to the commission's decisions. But as explained above, the Constitution does not require courts to defer to the commission's legal interpretations of specific safety requirements. Moreover, in their briefs, the parties adequately addressed the legal issue and fully articulated the relevant arguments. We therefore deny Underground Utilities' motion for oral argument.

## V. CONCLUSION

{¶ 48} We uphold the Tenth District Court of Appeals' determination that the judicial branch is not required to defer to the commission's legal interpretations of specific safety requirements. But we reverse the Tenth District's judgment granting a writ of mandamus, and we issue a limited writ ordering the commission to vacate the portion of the SHO's order relating to her interpretation of Adm.Code 4123:1-3-13(E)(7) with respect to the large excavator and to determine, in the first instance (1) whether the large excavator triggered application of Adm.Code 4123:1-3-13(E)(7) (regardless of whether the large excavator was a power shovel)

and if so, (2) whether Underground Utilities violated the rule and if so, (3) whether the violation proximately caused Berry's injuries. And we deny the motion for oral argument.

Judgment reversed

and limited writ granted.

_____

Plevin & Gallucci Co., L.P.A., Frank Gallucci III, and David R. Grant; and Flowers & Grube, Louis E. Grube, and Kendra N. Davitt, for appellee.

Frost Brown Todd, L.L.P., Matthew C. Blickensderfer, and Noel C. Shepard, for appellant Underground Utilities, Inc.

Dave Yost, Attorney General, and Cindy Albrecht, Assistant Attorney General, for appellant Industrial Commission of Ohio.

_____